IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

WILLIAM HORSCHAK,

                      Plaintiff,

   v.

STATE OF WISCONSIN, TREMPEALEAU COUNTY,       OPINION and ORDER
JOHN SACIA, LENI NILSESTUEN, SUSAN FISHER,
WAYNE DAHL, CAITLIN SOLSRUD, TODD                 25-cv-429-jdp
ROSESSLER, and AUBRA SMEIJA,

                      Defendants.

---

Plaintiff William Horschak, proceeding without counsel, alleges that multiple officials in the Trempealeau County District Attorney's office and Sheriff's office discriminated against him because of his disability when he sought their help pursuing postconviction relief related to an old criminal case. Horschak also alleges that defendants unlawfully searched for his name in driver records and law enforcement databases, created a retaliatory internal file about him, and implemented a blanket ban prohibiting the sheriff's department from dispatching officers to help him. The court has granted Horschak's motion to proceed without prepaying the filing fee. Dkt. 4.

The next step is to screen Horschak's complaint and dismiss any portion that is legally frivolous or malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law cannot be sued for money damages. 28 U.S.C. § 1915(e)(2). When screening a complaint filed by a litigant proceeding without counsel, I construe the complaint generously, holding it to a less stringent standard than formal pleadings drafted by lawyers. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). But even under this lenient standard, Horschak must allege enough facts to show that he is plausibly entitled to

relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). I conclude that Horschak fails to state a plausible claim for relief because he does not allege facts that would support an inference that defendants violated his rights. But I will give him the opportunity to file an amended complaint that fixes the problems identified in this order.

ALLEGATIONS OF FACT

Horschak has submitted three amended complaints since filing this action, each containing new allegations about events that have occurred since he filed the previous complaint. I will grant Horschak's motion to submit a third amended complaint, Dkt. 9, and treat that complaint, Dkt. 9-1, as the operative complaint. But the third amended complaint omits some factual context that appeared in previous versions. I draw the following facts primarily from the third amended complaint, but with additional details drawn from the previous complaints and the accompanying exhibits. I presume these facts to be true for the purposes of screening the complaint.

This case arises from an incident that occurred at the Trempealeau County courthouse on May 16, 2025. Horschak came to the courthouse that day seeking postconviction relief related to a 2003 case in which he pleaded guilty to a forgery charge. *See* Trempealeau County case no. 2003CF0088.[1] Earlier that morning, Horschak had emailed district attorney John Sacia to request a meeting. Dkt. 1-2 (email chain with DA Sacia). After Sacia denied the meeting request, Horschak followed up, stating that he was an "individual with

---

[1] In the 2003 state court records, Horschak's name is "William J. Bryhn." Horschak explains that he legally changed his last name in 2018.

high-functioning autism" and was requesting the meeting as an ADA accommodation "to ensure equal access in communicating with your office." *Id.* at 2.

Sacia did not respond to Horschak's second email requesting a meeting, so Horschak went to the courthouse in person. He attempted to speak with Sacia through a glass window in the lobby of the DA's office, but Sacia again refused to meet with him. Sacia and other DA's office staff made mocking comments about Horschak. (Horschak doesn't describe what these comments were.) At one point, Sacia called Horschak "weird."

After leaving the DA's office, Horschak left a voicemail with the office of defendant Susan Fisher, corporation counsel for Trempealeau County. Fisher emailed Sacia, who explained what had occurred. Fisher told Sacia that she would "start a file" on Horschak because "given his demonstrated persistence today, he may email or make additional attempts to communicate." Dkt. 1-8.

Horschak also called the county sheriff's office to report harassment by Sacia and other staff members in the DA's office. He spoke with dispatcher Caitlin Solsrud, who was "dismissive and unhelpful." Dkt. 9-1, ¶ 22. While speaking with Horschak, Solsrud accessed Horschak's records in Wisconsin law-enforcement databases, including DMV records and the TIME/NCIC database. She also created a computer-aided dispatch (CAD) entry, in which she described Horschak as "very agitated." Dkt. 5-2. Solsrud dispatched an officer, who took Horschak's statement about the alleged harassment.

After the May 16 incident, Horschak submitted several requests for records related to the incident and he filed a civil lawsuit, Trempealeau County Case No. 2025-cv-90, alleging violations of Wisconsin's open records laws. On May 20, 2025, Trempealeau County officials conducted two additional searches for records related to Horschak in the TIME/NCIC

3

database. Horschak wrote to the Trempealeau County board detailing his concerns about the May 16 incident, the failure of county officials to offer reasonable accommodations, and what he characterized as retaliatory searches of his name in law enforcement databases. Trempealeau County responded via counsel on June 26, 2025. (Horschak says that they "formally den[ied] his ADA request" in this letter, but he did not attach a copy of the letter itself.)

On June 29, 2025, Horschak called the Sheriff's office non-emergency line "to request police assistance concerning ongoing safety and legal concerns." Dkt. 9-1, ¶ 46. Dispatch initially told him that it would send a deputy, but when Horschak followed up several hours later, defendant Aubra Smeija, a dispatch officer, told Horschak that her office had "orders" not to dispatch officers to him. Smeija told Horschak to contact the county attorney instead and eventually transferred him to the voicemail box of defendant Wayne Dahl, the Chief Deputy Sheriff. Sheriff's office staff conducted another search of Horschak's name in the TIME/NCIC database.

In September 2025, Horschak filed a petition for postconviction relief in his 2003 criminal case. Horschak went to the DA's office to inspect the prosecutorial file in the 2003 case. DA Sacia "abruptly exited his office shouting [Horschak's] name in an aggressive tone." When Horschak asked him about the prosecutorial file, Sacia denied that any file existed and told Horschak that he would have to "pay the State for discovery." Dkt. 9-1, ¶ 65. Horschak filed a motion in the 2003 case to disqualify Sacia, which a state judge denied. At the end of December 2025, Horschak proposed a "global resolution" to his disputes with various Trempealeau County officials, but defendants did not accept the settlement proposal.

ANALYSIS

Horschak's claims fall into five categories. First, he asserts that defendants discriminated against him because of his disability. Second, he asserts that defendants searched for his personal information in online databases, in violation of the Fourth Amendment and Wisconsin privacy law. Third, he asserts that defendants targeted him for harassment due to personal animus, in violation of the Equal Protection Clause of the Fourteenth Amendment. Fourth, he asserts that defendants retaliated against him for requesting accommodations and for filing lawsuits against them. Fifth, he asserts that he was denied county services without due process.

**A. Disability claims**

Title II of the Americans with Disabilities Act (ADA) prohibits public entities from discriminating against, excluding, or denying services to individuals on the basis of disability status. 42 U.S.C. § 12132. Section 504 of the Rehabilitation Act prohibits programs or activities receiving federal funding from engaging in the same conduct. 29 U.S.C. § 794(a). I will analyze Horschak's ADA and Rehabilitation Act claims together, because the analysis is the same under either statute. *See CTL ex rel. Trebatoski v. Ashland Sch. Dist.*, 743 F.3d 524, 528 (7th Cir. 2014) (noting that the ADA and the Rehabilitation Act are largely "coextensive").

To state a claim for a violation of Title II of the ADA or the Rehabilitation Act, Horschak must allege that (1) he is a qualified individual with a disability; (2) he was denied the benefits of the services, programs, or activities of a public entity or otherwise subjected to discrimination by the entity; and (3) the denial or discrimination was by reason of his disability. *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015). Horschak alleged in his original complaint that he has high-functioning autism. Dkt. 1, ¶ 5. In the third amended complaint,

5

he says that he has disabilities that "affect his ability to process information and manage complex, stressful interactions with government officials." Dkt. 9-1, ¶ 15. I will assume that Horschak is a qualified individual with a disability.

Nevertheless, I will not allow Horschak to proceed on claims under the ADA or Rehabilitation Act because Horschak has not alleged facts sufficient to create a plausible inference that defendants denied him services on the basis of his disability. Horschak relies on both a failure-to-accommodate theory and an intentional discrimination theory. He says that Sacia and the DA's office failed to accommodate him because Sacia wouldn't meet with him to discuss his 2003 criminal case. But federal disability law requires public entities to offer reasonable accommodations only if the plaintiff shows that, but for his disability, he would have been able to access the services or benefits desired. *Wisconsin Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737 (7th Cir. 2006); *King v. Hendricks Cnty. Comm'rs*, 954 F.3d 981 (7th Cir. 2020). Nothing in the complaint suggests that the DA's office is required to meet with anyone about their past criminal cases, regardless of disability status. So the DA's office was not required to offer that service to Horschak either.

As for the intentional discrimination theory, Horschak says that defendants mocked him and called him "weird," created an internal file on him, and implemented orders not to dispatch officers to him. The first two actions are not related to whether Horschak was able to access county services, so they don't state a claim for a violation of the ADA or Rehabilitation Act. Horschak alleges that certain individuals in the DA's office and the Sheriff's office were dismissive and condescending, but he admits that they gave him information and offered him the services that they were able to offer, including sending a law enforcement officer to take his statement.

Horschak's allegation that employees in the sheriff's department were ordered not to dispatch officers to Horschak fails for a different reason: Horschak does not allege facts plausibly suggesting that he was denied services because of his disability. Horschak says that he requested police services for "ongoing safety and legal concerns," and that instead of receiving services, he was re-routed to the county attorney and the chief deputy sheriff. Dkt. 9-1, ¶¶ 53. But Horschak doesn't describe what these "ongoing safety and legal concerns" were, so this allegation doesn't allow for a plausible inference that Horschak would have received police assistance if not for his disability. I will not allow Horschak to proceed on a disability discrimination claim on this basis, but I will allow Horschak an opportunity to submit an amended complaint to fix this pleading deficiency.

### B. Fourth Amendment and Privacy Act

Horschak asserts that defendants violated his rights under the Fourth Amendment and federal driver privacy laws by searching for his name in state driver records and in law enforcement databases, including the National Crime Information Center (NCIC) database. I will not allow Horschak to proceed on Fourth Amendment claims on the basis. The court of appeals has held that accessing vehicle registration records or querying law enforcement databases like NCIC are not "searches" within the meaning of the Fourth Amendment. *United States v. Miranda-Sotolongo*, 827 F.3d 663, 667–68 (7th Cir. 2016)*; Willan v. Columbia Cnty.*, 280 F.3d 1160, 1162 (7th Cir. 2002). An individual does not have a reasonable expectation of privacy in information that is already stored within government databases. *See United States v. Diaz-Castaneda*, 494 F.3d 1146, 1151 (9th Cir. 2007)

Nor did the search of Horschak's driver records violate the Driver's Privacy Protection Act (DPPA). The DPPA provides a private cause of action against "[a] person who knowingly

7

obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter." 18 U.S.C. § 2724(a). But the DPPA permits law enforcement agencies to access driver records "for use . . . in carrying out [agency] functions." *Id.* § 2721(b)(1). Horschak alleges that sheriff's office dispatcher Caitlin Solsrud violated the DPPA when she accessed Horschak's Wisconsin driver records while responding to his dispatch call requesting police services. But it is clear from Solsrud's dispatch report and from the transcript of the dispatch call that Solsrud accessed those records to verify Horschak's personal information, including his name, date of birth, address, and phone number, so that she could input that information into the dispatch report. *See* Dkt. 5-2 (dispatch report); Dkt. 5-3 (dispatch call transcript). Horschak's allegation that Solsrud lacked a permissible reason to access his driver records is not plausible in light of the exhibits showing that she used the driver records to fill out a dispatch report.

## C. Equal protection

Horschak contends that defendants violated his rights under the Equal Protection Clause of the Fourteenth Amendment by denying him access to law enforcement services. To state a Fourteenth Amendment equal protection claim, a plaintiff must typically allege that the defendant mistreated him because of membership in a protected class like race, sex, or national origin. *See Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998). Physical and mental disabilities are not protected characteristics under the Equal Protection Clause. *See Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 367 (2001); *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 446 (1985). Because disability is not a protected characteristic, "the proper standard of review is rational basis." *See Srail v. Vill. of Lisle, Ill.*, 588 F.3d 940, 943 (7th Cir. 2009). Rational basis review requires Horschak to show that: (1) the

8

state actor intentionally treated him differently from others similarly situated; (2) this different treatment was caused by his disability; and *(3)* this different treatment was not rationally related to a legitimate state interest. *See id.*

Additionally, in certain cases, a plaintiff can bring a "class of one" equal protection claim by showing that "he was intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Geinosky v. City of Chicago*, 675 F.3d 743, 747 (7th Cir. 2012). Allegations that a government official has targeted a plaintiff for official harassment because of personal animus or malice may state a class of one claim. *See id.* at 750–51 (plaintiff stated class-of-one claim where he "alleged a pattern of deliberate and unconstitutional harassment, even though accomplished through the relatively mild mechanism of bogus parking tickets"); *Swanson v. City of Chetek,* 719 F.3d 780, 785 (7th Cir. 2013) (grant of summary judgment on class-of-one claim improper where the plaintiff "identified his specific harasser, provided a plausible motive and detailed a series of alleged actions by [the harasser] that appear[ed] illegitimate on their face").

Horschak's equal protection claims suffer from the same problem as his claims under the federal disability laws. He says that defendants denied him law enforcement services because of his disability or because of personal animus, but he doesn't explain why he needed law enforcement services other than for "ongoing safety and legal concerns." I cannot infer that similarly situated individuals would have received law enforcement services without knowing why Horschak requested those services in the first place.

**D. Retaliation**

Horschak asserts retaliation claims under the ADA, Rehabilitation Act, and the First Amendment. He alleges that defendants retaliated against him in various ways because he

9

requested disability accommodations, filed open records requests, and filed lawsuits against them. A retaliation claim has three elements: (1) the plaintiff engaged in protected conduct; (2) the defendant took action that would dissuade the average person from engaging in protected conduct; and (3) a causal connection exists between the plaintiff's conduct and the defendant's action. *Fuller v. McDonough*, 84 F.4th 686 (7th Cir. 2023) (Rehabilitation Act retaliation) *Harnishfeger v. United States*, 943 F.3d 1105, 1112–13 (7th Cir. 2019) (First Amendment retaliation).

Horschak's retaliation claims are based on much the same conduct as his other claims. He says that defendants retaliated against him for his accommodation requests, open records requests, and lawsuits in the following ways:

- They created an internal file on him.
- They searched for his name in driver records and law enforcement databases.
- They treated him with hostility when he visited the DA's office in May 2025 and October 2025.
- They refused to send law enforcement services to help him.

The first three actions are simply too trivial to support retaliation claims: none of these actions would dissuade the average person from engaging in protected conduct. The database searches and the creation of a "file" on Horschak were simply internal actions that county employees took to document their interactions with Horschak. These actions had no effect on Horschak, and he did not even know that these things had happened until he filed open records requests about his May 2025 visit to the county courthouse. As for the alleged hostility from county officials, Horschak says that county employees were dismissive and unhelpful, that DA Sacia called him "weird," and that Sacia "shout[ed] [Horschak's] name in an aggressive manner" and referred to this litigation when Horschak came to the courthouse to review

10

records from his 2003 criminal case. This is at most mild rudeness or incivility, which does not support a retaliation claim. *See Brown v. Advoc. S. Suburban Hosp.*, 700 F.3d 1101, 1107–08 (7th Cir. 2012) ("[W]e do not think that being called a trouble maker, a cry baby, or a spoiled child would dissuade a reasonable person from complaining of discrimination.").

That leaves Horschak's allegation that defendants refused to dispatch law enforcement officers to him. I will dismiss Horschak's retaliation claim based on that action for the same reason that I have dismissed Horschak's other claims based on that action. Horschak did not explain in his complaint why he needed law enforcement services, so it is not plausible that defendants' denial of services was retaliatory.

E. **Due process**

Finally, Horschak asserts a claim under the Fourteenth Amendment Due Process Clause, contending that defendants denied him access to law enforcement services without giving him an opportunity to contest the decision. To state a procedural due process claim, a plaintiff must allege the deprivation of a cognizable liberty or property interest. *See Cheli v. Taylorville Comm. Sch. Dist.*, 986 F.3d 1035, 1038–39 (7th Cir. 2021). The Supreme Court has held that individuals do not have a cognizable property interest in law enforcement services. *Town of Castle Rock, Colorado v. Gonzales*, 545 U.S. 748 (2005) (holding that the plaintiff lacked a property interest in police enforcement of a restraining order against her husband). So Horschak has not alleged that he was deprived of any liberty or property interest that could support a procedural due process claim.

CONCLUSION

Most of Horschak's allegations do not state a viable claim for relief, nor could they be amended to do so. But I will allow Horschak to file an amended complaint to fix the problems I have identified with his claims based on defendants' denial of law enforcement services. In drafting his amended complaint, Horschak must:

- Carefully consider whether he is naming proper defendants and omit defendants who did not personally participate in, or otherwise cause, a violation of his rights. Horschak must take care to allege what each defendant did, or failed to do, to violate his rights.

- Avoid referring to several defendants together. For instance, if more than one defendant has taken a particular action that Horschak believes supports a claim, he should identify each defendant who took that action.

- Identify by full name all the individuals he wishes to sue in the amended complaint's caption.

- Omit legal arguments other than explaining what types of claims that he wishes to bring.

Horschak has until April 1, 2026, to file an amended complaint. If he does not do so, I will dismiss this case.

ORDER

IT IS ORDERED that:

1. Plaintiff William Horschak's third amended complaint, Dkt. 9-1, is DISMISSED for failure to state a claim upon which relief may be granted.

2. Plaintiff may have until April 1, 2026, to submit an amended complaint that fixes the problems with his claims based on defendants' denial of law enforcement services.

3. The amended complaint will act as a complete substitute for the complaint. This case will proceed on only the allegations made and claims presented in the amended complaint, and against only the defendants specifically named in the amended complaint's caption.

4. If plaintiff fails to comply with this order, I may dismiss this case.

5. The clerk is directed to send plaintiff a copy of the court's non-prisoner complaint form.

Entered March 11, 2026.

                              BY THE COURT:

                              /s/

                              _____
                              JAMES D. PETERSON
                              District Judge